IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| REBECCA HASTY,<br><br>             Plaintiff,<br><br>vs.<br><br>NEBRASKA DEPARTMENT OF EDUCATION; DOUG CHRISTENSEN, in his individual and official capacities; DEAN FOLKERS, in his individual and official capacities; MARGE HAROUFF, in her individual and official capacities; RICHARD KATT, in his individual and official capacities; JOEL SCHERLING, in his individual and official capacities; and DONLYNN RICE, in her individual and official capacities,<br><br>             Defendants. | 4:09CV3196<br><br>MEMORANDUM AND ORDER |

This matter is before the magistrate judge pursuant to 28 U.S.C. § 636 and the consent of the parties on the defendants' Motion to Dismiss (Doc. 24) pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff filed a response in opposition (Doc. 27), incorporating a request for leave to file an amended complaint.

The plaintiff, Rebecca Hasty, was employed by the Nebraska Department of Education ("NDE") as civil rights compliance director from 2002 until her termination on March 7, 2009. Hasty alleges that her employment was terminated because she reported what she reasonably

believed to be violations of federal antidiscrimination laws, including 42 U.S.C. § 1983, Title VII[1], Title I of the Americans with Disabilities Act (ADA)[2], and the Age Discrimination in Employment Act (ADEA)[3]. In this regard, the complaint alleges:

> The actions taken by Defendants constitute[] retaliation under Title VII of Civil Rights Act, the ADEA, and Title I of the ADA and a free speech violation by the Defendants who acted in their individual capacities to deprive Hasty of her job with the NDE and any future opportunities after her termination in retaliation for the exercise of free speech rights and in expressing concerns about the non-compliance with anti-discrimination laws by the NDE.

(Filing 1, Complaint at ¶ 18). Plaintiff also seeks relief under the Nebraska Fair Employment Practices Act (NFEPA)[4]. The complaint requests judgment against all defendants "for compensatory damages, lost benefits, back pay, front pay, punitive damages, attorney's fees and costs and prays for judgment under 42 U.S.C. 1983 against the defendants for compensatory damages, back pay, front pay, punitive damages, attorney's fees and costs." (Filing 1, Complaint at p. 6/6).

In the motion, the defendants allege the action should be dismissed because "(a) Plaintiff seeks monetary damages against Defendants which are not allowed; (b) the Eleventh Amendment affords sovereign immunity and therefore the Court lacks jurisdiction over the subject matter; and (c) the Complaint fails to state a claim upon which relief can be granted."

The court finds that the motion should be granted, in part, pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e, *et seq.*, as amended.

[2] 42 U.S.C.A. §§ 12101, *et seq.*

[3] 29 U.S.C.A. §§ 621, *et seq.*

[4] Neb. Rev. Stat. § 48-1101, *et seq.*

## I. STANDARD OF REVIEW

### A. Rule 12(b)(1)

The Constitution of the United States "does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Thus, a motion to dismiss on the ground of sovereign immunity is often analyzed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g., Huggins v. Univ. of Louisiana Sys. Bd. of Supervisors*, 2009 WL 223272 at *1, Case No. 08-1397 (W.D. La., Jan. 6, 2009); *Ramos v. State of Nebraska*, 396 F. Supp. 2d 1053, 1058 n.7 (D. Neb. 2005).

Dismissal pursuant to Rule 12(b)(1) is proper when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows that there is no basis for jurisdiction. *See Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996). The party asserting jurisdiction has the burden of proving that jurisdiction is proper. *VS Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

### B. Rule 12(b)(6)

Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises, thus sparing the parties the burden and expense of unnecessary pretrial and trial activities. *See Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."

> In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

> plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. It is not, however, a "probability requirement." *Id*. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).
>
> A complaint states a plausible claim for relief if its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (parallel citations omitted).

In applying this standard, the court must take the plaintiff's factual allegations as true; however, legal conclusions or "formulaic recitation of the elements of a cause of action" may be set aside. *Ashcroft v. Iqbal*, 129 S. Ct. at 1949; *Braden*, 588 F.3d at 594. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "Ultimately, evaluation of a complaint upon a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 129 S.Ct. at 1950).

## II. FACTS

The complaint (Filing 1) alleges these facts.

The NDE is an agency of the State of Nebraska.[5] At all times relevant to this dispute, Doug Christensen was the duly appointed Commissioner for the NDE; Dean Folkers was the Assistant Director of Career Education for the NDE; Marge Harouff was the duly appointed Deputy

---

[5] Article VII, § 2, of the Constitution of the State of Nebraska provides: "The State Department of Education shall be comprised of a State Board of Education and a Commissioner of Education. The State Department of Education shall have general supervision and administration of the school system of the state and of such other activities as the Legislature may direct." The applicable legislation is codified at Neb. Rev. Stat. § 79-319, *et seq*.

Commissioner for the NDE; Joel Scherling was the Human Resources Director for the NDE and a member of Christensen's Cabinet; and Richard Katt was the Director of Career Education for the NDE.

Plaintiff became employed by the NDE in 2002 as the Director II in Career and Technical Education for the NDE ("Civil Rights Compliance Director"). Her position was funded entirely by a federal grant and she was required to provide reports to the Federal Office of Civil Rights. The essential functions of plaintiff's position included insuring that the NDE and Nebraska's schools were in compliance with federal civil rights laws. With respect to the NDE, plaintiff completed biannual reviews of the internal policies and procedures for potential civil rights issues and concerns.

Plaintiff reported to defendant Christensen, the Director of the NDE. Plaintiff alleges that she performed her duties in an exemplary manner, received excellent yearly evaluations, and was given national recognition as an equity officer over her tenure with the NDE. Plaintiff was contracted out by the NDE, serving on equity advisory boards and giving presentations on behalf of the NDE which brought in funding into the NDE coffers. Plaintiff has more education, qualifications and experience than almost all of the NDE administrators.

Shortly after another near perfect yearly evaluation in January 2008, plaintiff reported concerns after her biannual review of NDE's recent change in policies and procedures. She informed Christensen and defendant Scherling that she believed the NDE was not in compliance with federal anti-discrimination laws. She offered technical assistance to bring the NDE into compliance. Plaintiff also brought to the NDE's attention that there may be a conflict of interest between two

NDE administrators and the NDE itself due to their ownership interest in an outside for-profit company offering educational services.

After plaintiff reported the noncompliance (as well as a potential conflict of interest involving employee Sharon Katt and defendants Richard Katt, Folkers, and the NDE), the defendants utilized a progressive discipline process provided by the State employment contract in an effort to get rid of the plaintiff. After plaintiff complied with Federal regulations by notifying the Federal Office of Civil Rights of her concerns, she was terminated pending approval of the Nebraska Board of Education ("Board") on January 1, 2009. It was recommended to the Board that plaintiff be officially terminated. The Board adopted the recommendation, and plaintiff was officially terminated on March 7, 2009.

Since her termination, plaintiff has applied for over 200 positions for which she is qualified, but she has not been able to obtain employment. She alleges that, upon information and belief, NDE has began a campaign to defame her character in retaliation and in order to prevent her from gaining employment.

## II. LEGAL ANALYSIS

### A. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment to the Constitution of the United States provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). A state's Eleventh Amendment immunity,

however, may be abrogated or waived. For example, "'the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment[6].'" *Kimel*, 528 U.S. at 79 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)).

To waive sovereign immunity, a state must voluntarily invoke federal jurisdiction, *see College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999), or (2) "make a clear, unequivocal statement that it wishes to do so." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir. 2002) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238-40 (1985)).[7]

---

[6]U.S. Const. amend. XIV provides, in relevant part:

    Section 1. ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

    ....

    Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

[7]A state may waive its immunity "by voluntarily participating in federal spending programs where Congress expressed a clear intent to condition receipt of federal funds on a state's consent to waive its sovereign immunity." *Doe v. State of Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003). Under Neb. Rev. Stat. § 79-319, the State Board of Education has the authority to receive and distribute any money, commodities, goods, or services made available to it from the state or federal government and to "distribute money in accordance with the terms of any grant received ... so long as no public funds of the state, any political subdivision, or any public corporation are added to such federal grants."

    Although the plaintiff alleges that her job was funded entirely by a federal grant and she was required to provide reports to the Federal Office of Civil Rights, she has not argued that the State of Nebraska waived its sovereign immunity by accepting federal funding. *Cf. Doe v. State of Nebraska* (state agency knowingly waived Eleventh Amendment immunity, by contract, by accepting federal funds under § 504 of the Rehabilitation Act); *Thurber v. State of Nebraska*, 2006 WL 3392191, Case No. 4:06cv3174 (D. Neb. Oct. 26, 2006) (plaintiff argued that the State of Nebraska Department of Health and Human Services, by accepting federal funding, waived its Eleventh Amendment immunity to Title VII and ADEA claims ).

Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983, and it is well-settled that the State of Nebraska has not generally waived its immunity from liability in civil rights actions. *See, e.g., Ramos v. State of Nebraska*, 396 F. Supp. 2d at 1057-58; *Biby v. Bd. of Regents of Univ. of Nebraska at Lincoln*, 340 F. Supp. 2d 1031 (D. Neb. 2004), *aff'd*, 419 F.3d 845 (8th Cir. 2005). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office; it is no different from a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Neither the State nor its officials acting in their official capacities are "persons" capable of being sued under 42 U.S.C. § 1983. *Mayorga v. Missouri*, 442 F.3d 1128, 1131 n.2 (8th Cir. 2006) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. at 71).

The Eleventh Amendment, however, does not bar a federal lawsuit which seeks to prospectively restrain a state official from acting in violation of the United States Constitution or federal law because such relief would simply prohibit the state official from doing that which he or she has no legal right to do. *Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904, 914 (D. Neb. 2004) (citing *Ex parte Young*, 209 U.S. 123, 159 (1908)). "'State officials acting in their official capacities are § 1983 "persons" when sued for prospective relief, and the Eleventh Amendment does not bar such relief.'" *Ramos v. State of Nebraska*, 396 F. Supp. 2d at 1058 (quoting *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).

The U.S. Supreme Court has determined that the ADEA did not validly abrogate states' Eleventh Amendment immunity from suit by private individuals. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 537 (2002). Nor would a

state agency waive its Eleventh Amendment immunity as to ADEA claims by accepting federal funding. *See Fikse v. State of Iowa Third Judicial Dist. Dep't of Corr. Servs.*, 633 F. Supp. 2d 682, 689 (N.D. Iowa 2009).

The Supreme Court has also determined that Congress did not validly exercise its Section 5 enforcement powers under the Fourteenth Amendment in seeking to abrogate state sovereign immunity under Title I of the ADA. *See Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 365 (2001). Under *Ex parte Young* and its progeny, however, "'private individuals can in fact sue state officials under the ADA for prospective, injunctive relief only.'" *Fiske*, 633 F. Supp. 2d at 691 (quoting *Grey v. Wilburn,* 270 F.3d 607, 609 (8th Cir. 2001) ).

The plaintiff also seeks relief under the Nebraska Fair Employment Practice Act ("NFEPA"). NFEPA provides that the "state and governmental agencies created by the state may be sued upon claims arising under the Nebraska Fair Employment Practice Act in the same manner as provided by such law for suits against other employers." Neb. Rev. Stat. § 48-1126. At least two judges of this court have recently held that the State of Nebraska has not waived Eleventh Amendment immunity in NFEPA actions. *See Wright v. Nebraska Health & Human Servs. Sys.*, 2005 WL 1331158, Case No. 8:04CV265 (D. Neb. Feb. 14, 2005) (Bataillon, J.); *Schreiber v. State of Nebraska*, 2006 WL 488719, Case No. 8:05CV537 (D. Neb. Feb. 28, 2006) (Smith Camp, J.). Because the state of Nebraska has not consented to suit in federal court under NFEPA, plaintiff's claims based on alleged violations of NFEPA are barred in this court.

Applying these principles and precedents, the court finds that the plaintiff's § 1983, ADEA, ADA, and NFEPA claims against the NDE are barred by the doctrine of sovereign immunity. Any

"official capacity" claims against defendants Folkers, Harouff, Katt, Scherling and Rice are also barred by the doctrine of sovereign immunity, to the extent non-prospective relief and monetary damages are sought. Since the sovereign immunity doctrine results in an insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate.

Turning to plaintiff's Title VII claims, the Eighth Circuit has addressed the interaction between Eleventh Amendment immunity and Title VII. "[R]ecent case law has recognized that Title VII, through Section 5 of the Fourteenth Amendment, legitimately abrogates a state's Eleventh Amendment sovereign immunity." *Thurber v. State of Nebraska*, 2006 WL 3392191 at *4, Case No. 4:06cv3174 (D. Neb. Oct. 26, 2006) (citing *Maitland v. Univ. of Minn.*, 260 F.3d 959, 964 (8th Cir. 2001), *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976), and *Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 627 (8th Cir. 2001)). Thus, the NDE, and its employees acting in their official capacities, are not entitled to Eleventh Amendment immunity with respect to a claim made pursuant to Title VII.

### B. "Official Capacity" Claims for Prospective Relief

As discussed above, while the plaintiff cannot maintain § 1983, ADA and ADEA claims directly against the NDE, the Eleventh Amendment does not bar the claims against State officials, acting in their official capacities, for prospective injunctive relief to prevent future violations of federal law. *See Ramos v. State of Nebraska*, 396 F. Supp. 2d at 1057-58. For example,

> Pursuant to 42 U.S.C. § 1983, the law imposes civil liability on any person who "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." An essential element in any § 1983 claim is that the conduct complained of must have been committed by a person acting under color of state law. *See DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999), *cert. denied*, 535 U.S. 1064 (2002); *see also Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003) ("essential

> elements of a 1983 claim are: (1) violation of a constitutional right, (2) *committed by a state actor*, (3) who acted with the requisite culpability and causation to violate the constitutional right") (emphasis added). Thus, § 1983 authorizes suits against state officers for damages arising from official acts. *Haver v. Melo*, 502 U.S. 21, 24 (1991). Moreover, state officers may be held personally liable for damages under § 1983 based on actions taken in their official capacities. *Id.*

*Biby v. Board of Regents*, 340 F. Supp. 2d at 1033-34 (parallel citations omitted).

Front pay is an equitable remedy available when reinstatement of employment is impracticable or impossible. *Newhouse v. McCormick & Co., Inc.*, 110 F.3d 635, 641(8th Cir. 1997). Plaintiff's request for front pay is a request for prospective relief. *See Gibson v. Arkansas Dep't of Corr.,* 265 F.3d 718, 722 (8th Cir. 2001).

### C.  "Individual Capacity" Claims

Plaintiff has clarified in her brief that she is not alleging any individual-capacity claims pursuant to the ADEA, ADA or Title VII. She does pursue individual-capacity claims under § 1983 based on the defendants' retaliation in violation of her First Amendment right of free speech.

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* The Supreme Court has specifically rejected the argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity." *Hafer v. Melo*, 502 U.S. 21, 27 (1991).

"A public employer 'may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.'" *McGee v. Public Water Supply, Dist. No. 2 of Jefferson County, Mo.*, 471 F.3d 918, 919 (8th Cir. 2006) (quoting *Rankin v. McPherson*, 483

U.S. 378, 383 (1987) ).  Plaintiff's speech is entitled to First Amendment protection if (1) she spoke as a citizen, and not as an employee, on a matter of public concern, and (2) her right to free speech outweighs the employer's interest in promoting the efficiency of its public services.  *Davenport v. University of Arkansas Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009).  When making a statement pursuant to her official duties, a public employee is not speaking as a citizen.  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the pleadings liberally in favor of the plaintiff.  *See, e.g., Ashby v. Dyer*, 427 F. Supp. 2d 929, 932 (D. Neb. 2006).  In this case, the plaintiff alleges the defendants retaliated against her because she reported what she reasonably believed to be conflicts of interest and violations of federal antidiscrimination laws.  These topics would appear to be matters of public concern under *Connick v. Meyers*, 461 U.S. 138, 146 (1983).  Plaintiff's factual allegations do not foreclose the possibility that she spoke out as a citizen, and not merely as an employee, on matters of public concern.

The issue of qualified immunity was not raised or discussed in the defendants' brief and, therefore, will not be addressed in this Memorandum and Order.  *See* NECivR  7.0.1(a).

**ORDER**

Application of the sovereign immunity doctrine results in an insuperable bar to relief as to plaintiff's claims under 42 U.S.C. § 1983, the ADEA, Title I of the ADA, and the Nebraska Fair Employment Practice Act, against the Nebraska Department of Education and the other defendants, in their official capacities.  Accordingly, these claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The defendants do not enjoy sovereign immunity on Title VII claims, and plaintiff's Title VII claim remains pending against the Nebraska Department of Education and the other defendants, in their official capacities.

Plaintiff may maintain a cause of action pursuant to 42 U.S.C. § 1983, for prospective relief only, against defendants Christensen, Folkers, Harouff, Katt, Scherling and Rice, in their official capacities.

Plaintiff may maintain a cause of action pursuant to 42 U.S.C. § 1983 against defendants Christensen, Folkers, Harouff, Katt, Scherling and Rice, in their individual capacities, and may request monetary damages in conjunction with the individual-capacity claims.

**IT IS ORDERED** that defendants' Motion to Dismiss (Doc. 24) is granted in part, and denied in part, as follows:

1. The motion is granted as to plaintiff's claims under 42 U.S.C. § 1983, the ADEA, Title I of the ADA, and the Nebraska Fair Employment Practice Act, against the Nebraska Department of Education and the other defendants, in their official capacities.

2. The motion is denied as to all other claims.

3. Plaintiff may file a motion for leave to file an amended complaint, consistent with the discussion in this Memorandum and Order. The motion must be filed no later than **May 5, 2010** and must fully comply with all requirements of NECivR 15.1.

4. Defendants' answer date is suspended through **May 5, 2010.** If plaintiff seeks leave to amend the complaint, the defendants' answer date is further suspended pending the court's ruling on the motion.

5. If plaintiff does **not** file a motion for leave to amend the complaint, the remaining defendants shall file and serve their answers to the remaining claims, consistent with the discussion in this Memorandum and Order, on or before **May 20, 2010**.

**DATED April 15, 2010.**

            **BY THE COURT:**

            s/ F.A. Gossett
            **United States Magistrate Judge**